Good morning your honor. I'm Jim Jones and I represent the Tulalip tribes and my co-counsel Mason Morissette also represents the Tulalip tribes in the continuing USD Washington proceedings and in the case you just heard and may also participate in argument to the extent that that's appropriate given the questions. Well you just have 15 minutes total so if you tell me how you want to share it or if you... We haven't planned to share it yet but I anticipate questions may come up that would be more appropriate for Mr. Morissette to respond to. All right. I would like to reserve three minutes of my time and at the beginning I would say the court we very much appreciate the court expediting the appeal so that the intervention question can hopefully be resolved before the case below moves to a dispositive stage. The dispositive motion deadline is in November and the trial date is next February. There's two things I would like to address in the argument. First, the calculus of Green 1 where Judge Zille had held phase one summary judgment proceeding and held that the USD Washington decision that we're calling Washington 2 was raised judicata and collateral estoppel as to the treaty successor claims and treaty rights claims of the Samish group was the predicate for the Green 1 holding as was Judge Zille's limitation of the remand to the agency at the due process phase of the case to say that the remand will not address treaty rights. That calculus doesn't apply here. The complaints are virtually identical. The Samish complaint in Green and the Snohomish complaint here. They both allege treaty successor status and they both allege that treaty rights, the both sought, they both allege that they were recognized by the treaty and they both sought a declaration and an injunction to implement those. There have been no phase one summary judgment proceedings in this case and so the very basic premise of Green 1 that led to the careful balance that was stricken such that Toileff's treaty rights would not be implicated on the remand simply hasn't happened here. Now I don't think that solves the problem entirely. I think that's a reason for reversal but it's clear that if you send it back that the district judge could then take those issues out of the case which leaves us with the irreconcilable conflict that's been identified in the prior argument. Well is it your preference that the court would go on bonk and resolve this? The calculus of Green 1 that treaty rights need to be excluded from recognition proceedings is clearly the preference that we have if in fact the Toileff's treaty rights and the property rights judgment that resulted from a proceeding that we didn't elect to bring. The group made a calculated litigation decision to litigate their treaty status in USD Washington. It's in the record. There's a huge legal memo that they have weighing the pros and cons of that and put Toileff at the risk of losing that case. So Toileff's view is that if it's necessary for the court to resolve the conflict on bonk that it should be resolved because Green 1 got it right in the sense that Toileff does have very serious treaty property rights issues at stake in this case and I don't think I can say I can express the due process argument that applies here more eloquently than Judge Bea did in the dissent to, I'm not sure what we're I'll call it the irreconcilable or rather I'll call it the extraordinary circumstances case the most recent Samish panel rendered but if it's necessary for the court because it agrees with Judge Kunawer in this case that it was bound by Green and had to ignore what the most recent Samish panel said if that's necessary to allow Toileff to protect its rights then sure We just decide what the law of the circuit is and that doesn't guarantee anyone the result that they want it just what it does is it says without the confusion that we have right now or the irreconcilable difference that you know that that it just says what the law of the circuit is right now we're in a situation where it's been stated that some people feel that you can't you know and the the recent case can't overrule a three-judge panel and if they're inconsistent then that's you know that's that's the only way it can be straightened out but the en banc panel could come out with whatever it wants well and we've argued come out with green it could come out with recognition equals rights it could you know but it would there wouldn't be a conflict anymore if if if the if the differences are irreconcilable they need to be resolved to protect Toileff's interest under the judgment and it's far greater interest in this case than in Samish because in Samish Toileff's sovereign interest as the adjudicated successor of the Snohomish treaty tribe a similar interest wasn't at stake you know that's a that's the cultural identity and the very basis for Toileff that's who they are and Toileff the Samish tribe never claimed to be a successor of the same tribes that Toileff has been en banc is required to resolve the irreconcilable difference then it surely should be done perhaps you can resolve the case without going there though rule 24 says it's to be a practical inquiry and I don't think that the the panel in green had intended to foreclose Toileff's intervention in the event that it's interest would be impaired to let the green panel didn't say that if treaty interest will be impaired that intervention is improper and it can it can be said that that the development in the Samish panel's decision is sufficient to impair Toileff's interest it certainly creates great doubt as to what's going to happen regarding the Samish case if the judgments reopened the inevitable conclusion language is certainly troubling we left green and Judge Zille had ruled that because the treaty issue was out of the case that Toileff couldn't participate in the administrative remand proceedings as a party couldn't cross-examine the administrative law judge applied that to keep the other treaty tribes out the Samish had essentially a private hearing that resulted in their recognition and yet its effect to take that and apply its effect to what was decided in a real article 3 judicial proceeding in US v Washington we think would be inappropriate deference and we think that that the green panel got it right there should be no deference to that type of a proceeding you're making the point that the intervention motion really in this case was resolved almost maybe before the judge was inclined to narrow the scope of the proceedings apparently I mean you're saying it's true on summary judgment all those issues could come up again if if he were reversed but what what was his theory in denying intervention right now judge held that he was bound by green that the Samish panel lacked authority to over rule it and and he wasn't impressed with any argument that this really is a different situation from green we pointed we pointed out that the treaty rights claims were in the case and and that did not change the ruling I suppose he is of the view that they really aren't if he's relying on green well and if they're not and in this court remanded for that reason they could certainly be taken out and hopefully the court would do exactly what judge Zilli did my point is that that hasn't happened here so the posture of the cases is different I think ultimately we reach the same irreconcilable conflict or not issue that's the problem if if you take those issues out then you're denied intervention on the theory of green but you have to worry a lot about the extraordinary circumstances prong of things well and the the inquiry under rule 24 is supposed to be a practical inquiry and practically speaking the reality is that the Samish panel decision on extraordinary circumstances is there I doubt that today will be the last time that we hear the words inevitable conclusion if the Snohomish group is recognized and we're going to have to grapple with that in the future so even if the posture of the case were made exactly the same as it was in green we would still have that problem and it's difficult to see how the green panel could have possibly reached the conclusions that were reached in that case if for example in the context of one of the other groups that the the extraordinary circumstance case had been decided first I think that it's impossible to say that the court in green would have reached the same conclusion I gather from your arguments that your view is that recognition really establishes a different condition than what is necessary for a treaty continuous structure tribal structure and so on is that I mean are you saying the recognition is it really a different standard well as as the court recognized in green the court the group seeking recognition could seek to establish it without necessarily having to establish the predicate facts to to justify their admission as a treaty tribe you can be recognized without descending from any treaty tribe that's correct there's many tribes or those tribes that are recognized and treaty is not part of the equation at all but well that's what you're saying but can you say that statement after the last case which would seem to say recognition equals treaty tribe well and and that brings into question whether that dicta in the in the Samish panels decision will ultimately be applied should should that case be reopened you know in the argument I mean if you if if it was the holding it's not dicta well and from my perspective representing to lay lip and concerned about its interest being impaired whether it's dicta or not I have the same concern that there's going to be that issue to be dealt with if the relationship between treaty rights and recognition is as the Samish panel has most recently suggested and I say do you want to save the balance of your time for rebuttal you're at two and a half minutes thank you good morning good morning honors may it please the court my name is Alexandra Smith and together with co-counsel Richard Allen and Daniel Bergland we represent the Snohomish tribe of Indians and its chairman Michael C Evans chairman Evans and former chairman Bill Matheson are in the courtroom today along with many members of the Snohomish tribe and I guess I'd like to dive in just on a few points number one is it's important to note that in the complaint the Snohomish tribe brought there's no claim for an entitlement to treaty rights there are three causes of action a violation of the APA a violation of due process and a violation of equal protection so the it doesn't go as far as a tribe has claimed and we ask that this court affirm the district courts denial of tribes motion for intervention because the court correctly found that this case is parallel to green one and I will try to dive in and explain why Washington what we call Washington three the panel decision does not change green one and the first is both rose in completely different contexts one was whether there's a significantly protectable interest to warn intervention in another tribes recognition lawsuit under rule 24a and the other came up in the recognition constitute an extraordinary circumstance that justifies reopening a decision under 60 v6 and in Washington three it's limited by its context the only relief that can be awarded under 60 v6 is reopening of the judgment the court can't go any further under that rule and award affirmative relief such as an entitlement to treaty fishing rights so we think on that basis alone all Washington three stands for is treaty that recognition may entitle you to reopen the subsequent judicial proceeding on treaty fishing so it's the language that we've all been talking around is that dicta then in Washington three I think you have to say it's dicta in order to put it in that context here but after the motion to reopen I'm just gonna bet that some people aren't gonna say it's dicta anymore once they get it reopened true however not sitting here it's true but I think it's another factor I think it's important to remember is practically we haven't gotten to the phase of of what happens when you go down the road it's reopened and now we're saying wait a second somebody's got treaty fishing rights because they were they achieve federal recognition at some point a court is going to have to do some kind of a preclusion or estoppel analysis and we haven't even gotten to that point yet and there's very different reasons why the factual findings in a BIA proceeding for judicial proceeding there are different standards of proof the if assuming there's a conflict between green and Washington three what significance do the appellees assigned to the fact that the Supreme Court denied cert well I think the same significance that we do to the fact that both the United States and the treaty tribes petition for rehearing on bonk after Washington three that panel decision was decided and a majority of the judges in this circuit apparently didn't think it conflicted with or at least change the analysis in green one on intervention enough to grant that petition for rehearing on bonk so in order for the tulips to have a protectable interest that would justify intervention in a recognition lawsuit they really have to show that something is practically impaired and a point we really want to make sure we emphasize is we're nowhere near that point in this case and this is a case solely addresses the BIA's procedures it used in deciding and evaluating the Snohomish tribes petition for acknowledgement there's I'm sorry is there anything in your complaint that talks well I suppose maybe there is what tribes you I strike that but I got the impression from your opponent that there was something about the claim of recognition that threatened their history well I thought they talked about in the context of their brief and I understood them to talk about it today in the context of being an adjudicated successor to a treaty signatory not being a federally recognized tribe and it's important to remember there is no historic Tulalip tribe Tulalip is a geographic area that groups descendants of other other tribes converged upon as a reservation and then incorporated and organized under the Indian Reorganization Act and so the Tulalip themselves if you look back at the Washington decisions are determined to be successors to the historic Snohomish Skykomish tribes and Snoqualmie tribes and notably the Snoqualmie tribe has since gained recognition that happened fairly recently and there's no impact or any discussion of how that has negatively impacted Tulalip's cultural identity federal recognition status in their briefs what is the Ninth Circuit law does recognition equal treaty rights I'd argue no your honor and I think it's also important to look back at I was trying to deconstruct Washington three because I was trying to understand where that statement came from or those statements came from and the starting point for it is I think and a well the United States to recognize a tribe and enter into a government-to-government relationship with it is a political decision and that's one that courts cannot later undo and I think that's well recognized it's a Congress has plenary power and the executive branch to a certain extent over Indians and that includes the power to recognize tribes with which they will enter into these relationships but that doesn't mean that federal recognition then becomes binding preclusive and determinative on all factual assumptions and presumptions that went into that decision that the government made to recognize that tribe and that that can have preclusive effect in all subsequent judicial proceedings I think that's just I don't see how you can get there from that initial presumption that's sort of what happened though and in the opinion at least in the last Ninth Circuit case they sort of they they looked at the criteria for recognition and said well you know this must have been a tribe that maintained a governmental structure from historic times to the present right but again I guess I'd point to the limitations of that context which is a 60 v 6 and say all that the court could say is recognition entitles you to reopen it doesn't entitle you to an affirmative claim to or affirmative award of treaty status and the second part of that is again there's different standards of proof in a BIA proceeding that may not be found to be persuasive or binding in a subsequent judicial proceeding if you look at the acknowledgement regulations 25 CFR section 83.6 talks about sort of loose standards of proof how criterias for recognition will be considered met if the available evidence establishes a reasonable likelihood of the validity of the facts relating to that criterion and similarly BIA is supposed to take into account historical situations and time periods for which evidence is demonstrably limited or not available and that's a completely different standard of proof than you would need to establish a fact in the subsequent judicial proceeding. So you we can we can take underlying facts in a litigated case and turn them into a collateral estoppel or something and you're saying it really you don't get a collateral estoppel in a recognition proceeding of the underlying facts. Well I guess I'm saying that that's an analysis that has to take place in the subsequent judicial proceeding and the interested parties have to have a chance to actually litigate that estoppel issue that a court can't sort of say for all intents and purposes in all possible cases this is this X leads to Y inevitably. Well is there something about the nature of a recognition proceeding that might preclude estoppel effect of facts underlying the decision to recognize? Well I know in another other administrative context there are those analyses that go on you may have an EEOC case where an administrative law judge makes specific findings and you have a subsequent title. Oh yeah that'll work. You have lots of those and so there's there that happens all the time where you assess what is the effect of that administrative proceeding and what what preclusive effect should we give to separate analysis that happens down the road and that you can't at this point make that preclusive judgment call and that that's where we think the Ninth Circuit's panel opinion in Washington 3 went too far. I guess what I'm getting at is when when someone is put in the position of making that later judgment call is there any peculiarity about recognition proceedings that might differentiate it from that EEOC ALJ determination? Right. What was the degree of adversariness is one issue that might sometimes come up. Right and that's you know I think that's part of the estoppel analysis for the same parties involved that they have the same interests in litigating you know where they actually litigated all those kind of issues. Is there incentive to litigate? Exactly, exactly. Let's see also if you look at the two Laila tribes position in the treaty tribes brief they're consistent with this idea that there's a limit to the the context in which Washington 3 was decided and you can only give it a certain amount of effect and in fact you can harmonize it with Green 1 in and and not necessarily have to go to a rehearing on bonk. But I wanted to bring this case back because it's very easy to get lost in the discussions of what might happen in the ongoing Washington US v Washington proceedings. This case isn't about that and that's not this case. This case is about a 30-year effort by the Snohomish tribe to gain federal recognition and what the Tulalip tribe is trying to do here is stop the case from happening. They want to move to dismiss this if they're allowed to intervene before the Snohomish even have one day in court on that issue. And recognition is means so much to tribes and it means entering into a government-to-government relationship with the United States, sovereignty over people and property. It means eligibility for federal, excuse me, federal benefits and services including access to funds and other assistance for housing, education, social services, management of natural resources, establishment of governmental institutions. And most importantly and what this case is really about is rightly or wrongly federal recognition has come to be seen as a kind of blessing, a legitimacy or a validation of the tribes very existence as a tribe. Well taking the other side to it though in the sense that you know just kind of giving it all context, if this panel follows Washington's holding that a can it also conclude that Tulalip tribe has no protectable interest in the recognition action because if the Snohomish tribe acquires federal recognition it has a powerful sword in its efforts to effectively dilute the Tulalip tribes fishing treaty rights. So I mean it's pretty hard to you know everyone's making these sort of antiseptic arguments that separate it but it really all kind of comes down to that doesn't it? I mean I mean it does if if it's demonstrably the law of this circuit that federal recognition means an affirmative right to treaty status then the Tulalip tribe as though all other adjudicated tribes have an interest but and that's why I think he it's really messy if that is the law of the circuit because it then means every possible treaty tribe has the opportunity to intervene in this lawsuit and they've had the opportunity to try to get it dismissed and that would cut off everything else that this lawsuit means for the Snohomish tribe. I mean I think that early statement in Green and Green... So then it's sort of both of you agree that Green would be better. Absolutely I think yeah if you we agree completely with the Tulalip in its treaty tribes brief in the preceding case. They make a very compelling and persuasive argument for why Green won us the law of the circuit and should stay the law of the circuit but it makes the very important statement in there that federal recognition and treaty status are two different things with two very different legal effects and it's those legal effects of recognition that are all that's an issue for the Snohomish tribe here and that they're of incredible importance to the tribe and we just ask you to affirm the district courts that they don't lose their ability to have their day in court on that issue. I suppose the effect that's the point you're making I guess but the effect of giving some treaty effect to a recognition decision means it compels treaty tribes to oppose a recognition which may have a hundred effects and they're opposing it because of one of those effects. Exactly, exactly your honor. There are no further questions? There do not appear to be. Thank you for your argument. On the question of whether it's possible for a group to be recognized, clearly under the regulations some of them don't, they're not required to prove historic tribe status back to treaty times. In some parts of the regs they can go back to 1900, but if you look at the complaint here and the petition here for the Snohomish group, the gravamen of both is that their successor to the Snohomish treaty tribe, the Tulalip, has already been adjudicated successor to. So while it's possible to have a recognition result that allows the tribe to get the other 99 of the hundred benefits of recognized status, if in fact what if the predicate facts of proving treaty status are going to be litigated in the recognition context, then the treaty tribes are necessary parties to that Yeah, I couldn't argue with you there. You have to come in if that's going to be one of the results. And the lament of the Snohomish group that it would require that is really driven by the fact that they made the calculated litigation decision that they thought they had a better chance before Judge Bolt to determine their status as successor of the Snohomish treaty tribe and put all of the treaty tribes at risk in that proceeding and we had a real trial and their strategy backfired on them. That's what happened here. And so while I can appreciate their lament, it's not something that was caused by the treaty tribes. The treaty tribes went through a real lawsuit and we didn't think it was going to be a heads-I-win, tails-you-lose proposition. The facts have already been litigated on this question. They were decided many, many, many years ago in a case where our losing and we don't relish the notion that we would have to re-litigate them again in the federal acknowledgment process, particularly because that's not an adversarial process. The federal government will not give out the membership list and they will not give out the genealogical evidence that's critical to that process because they're hamstrung by the Privacy Act. And so, and for example, in this case, we were certainly allowed to submit comments on the proposed finding against the Snohomish and they submitted comments as well and under the regulations, the government allowed them to respond to our comments and denied us the opportunity to respond to their comments. It's not a true adversarial proceeding and we had a true adversarial proceeding in U.S. v. Washington and it deserves finality. Thank you. Time is up. Thank you both for your excellent argument in this matter. This case stands submitted and court will be in recess until tomorrow morning. All rise. This court for this session stands adjourned.
judges: Canby, Thompson, Callahan